# In the United States District Court
## for the
## Western District of Texas

| | | |
|---|---|---|
| Lennine Bashiri | § | |
| | § | |
| v. | § | SA-07-cv-1028 |
| | § | |
| Alamo Community College | § | |
| District | | |

## Order

On this day came on to be considered various motions[1] and responses filed by the parties in this case. The Court's rulings follow:

### Background

In Plaintiff's Second Amended Complaint, Plaintiff brings claims under the Age Discrimination in Employment Act (ADEA), Title VII (race/color, gender, national origin discrimination and retaliation), and claims under 42 U.S.C. § 1981.

Plaintiff is a naturalized citizen and was born in Iran. He became

---

[1] Defendant filed eleven motions for summary judgment in this case. Each motion repeated the factual background in this case. Each motion attempted to address the specific job position that Plaintiff challenged, however, on a number of occasions, Defendant included exhibits and arguments that pertained to a completed different job position. In the future, Counsel for Defendant is urged to file one document that addresses the necessary background to avoid needless repetition. In addition, the motions were not filed in any particular order. Job positions that were sought before any EEO activity occurred were not addressed first, so the Court was required to continually go back and forth in the chronology of events. Finally, it appears that counsel for both parties failed to adequately communicated with each other. Defendant sought summary judgment on numerous claims. Plaintiff's counsel states that he had previously advised Defendant's counsel that he was not pursuing certain claims.

employed with the ACCD[2] as an adjunct part-time professor in 1995. He alleges that since 2006, he has applied for several full-time tenured track faculty positions for which he was qualified, but not selected.[3] Plaintiff alleges that these positions were filled by younger, non-Iranian males and females who were allegedly less qualified. He further alleges that after he complained of the discriminatory acts, he was retaliated against.

Plaintiff filed an original charge of discrimination with the EEOC on October 25, 2006. In that charge he alleged that on April 27, 2006, he was informed that he was not selected for two tenure-track positions (human anatomy and physiology). He alleged that his non-selection was discriminatory based on his race, sex, national origin, age and religion.

On March 2, 2007, he amended his charge of discrimination to state that in March 2006, July 2006, September 2006 and January 2007 he applied for

---

[2] The Alamo Community College District serves primarily the Bexar County, Texas community. Its five colleges - San Antonio, St. Philip's, Palo Alto, Northeast Lakeview, and Northwest Vista - offer associate degrees, certificates and licensures in occupational programs. Each of the five colleges made individual decisions on who to hire or promote to their faculty. Each college would convene a selection committee to review the various applications for a position. Prior to serving on a selection committee, the selection committee members received diversity training. Each selection committee used their own criteria in evaluating the candidates. The selection committees that were convened in each of the job positions at issue here were composed of different individuals.

[3] Specifically, Plaintiff alleges that between January and March of 2006, he applied for job no. 063199 at Palo Alto College, job no. 061183 at San Antonio College, and job no. 064361 at Northwest Vista College. Plaintiff alleges that between May and September, 2006, he applied for job no. 065532 at Northwest Lakeview College and job no. 063831 at Palo Alto College. In January 2007, Plaintiff applied for job no. 074195 at Northwest Vista College. In March/April 2007, he applied for job no. 072409 at St. Phillip's College. In December 2007, Plaintiff was denied a temporary full-time position at St. Phillip's College (position filled by Katherine King). In January of 2008, Plaintiff applied for three other positions, one at St. Philip's College (Job No. 082241), Northeast Lakeview College (Job No. 085288), and a position at Northwest Vista College (Job No. 084259).

various positions and was not selected.  He also added a claim of retaliation.

Plaintiff filed this lawsuit on December 18, 2007.

## Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't. of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must ... set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e).  The nonmoving party, however, "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman*, 369 F.3d at 860 (citation omitted).  Further, a fact is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).  The Court reviews all facts in the light most favorable to the non-moving party. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004).

## Title VII/ADEA framework

A plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he is qualified for the

position at issue, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class or was treated less favorably than others similarly situated. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *Rachid*, 376 F.3d at 312. If the defendant satisfies its burden of production, the burden then shifts back to the plaintiff to offer sufficient evidence to create a genuine issue of material fact that either (1) the defendant's reason is false and is a pretext for discrimination, or (2) that although the defendant's reason is true the plaintiff's protected characteristic was a "motivating factor" in its decision. *Tratree v. BP North American Pipelines, Inc.*, 277 Fed. Appx. 390, 394 (5th Cir. 2008).

With regard to retaliation claims under Title VII, "an employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (omission in original) (quoting 42 U.S.C. § 2000e-3). Retaliation claims are governed by the familiar *McDonnell Douglas* burden-shifting framework. *Id.* (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing that (1)

he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. After making such a showing, the employer must articulate legitimate, nondiscriminatory reasons for its employment action. If the employer articulates such reasons, the burden falls back on the plaintiff to show that the employer's proffered reasons are a pretext for its actual retaliatory purpose. *See Harris v. Mississippi Transp. Com'n*, 2009 WL 2168913 (5th Cir. 2009).

### Plaintiff's motion for partial summary judgment (docket no. 43)

In this motion Plaintiff seeks summary judgment on various defenses raised by the Defendant.

Defendant asserts the defense that Plaintiff failed to exhaust his administrative remedies by not filing a charge of discrimination with the EEOC regarding job nos. 072409, 085288, 082241, and 084259.

In his affidavit supporting his motion for partial summary judgment Plaintiff states that on March 12, 2007, he applied at St. Philip's College for Job No. 072409. He further states that he was given an interview, but learned in the Summer of 2007 that he was not selected for the position. He also states in his affidavit that "On January 31, 2008, I applied for a position at St. Philip's College, Job No. 082241. I was given an interview but I learned that I was not selected for this position in the Summer of 2008. On January 31, 2008, I applied for a position at Northeast Lakeview College, Job No. 085288 and at Northwest Vista College, Job No. 084259. I was not even given an interview for these two

positions and I learned on or about October 24, 2008 that I was not selected for these two positions."

By Plaintiff's own testimony it is apparent that Plaintiff did not file any charge of discrimination with the EEOC regarding job nos. 072409, 085288, 082241, and 084259. Accordingly, he is precluded from pursuing any Title VII or ADEA claim based on these discrete acts. *See Hartz v. Administrators of Tulane Educational Fund*, 275 Fed. Appx. 281, 287 (5th Cir. 2008) ("If the employee fails to submit a timely EEOC charge, the employee may not challenge the alleged discriminatory conduct in court."). Plaintiff appears to argue that his failure should be excused because these alleged discriminatory acts were part of a "continuing violation." However, the continuing violation doctrine is applicable only to hostile work environment claims.[4]

Plaintiff has not alleged any hostile work environment claim in this case.

---

[4] *See Hartz*, 275 Fed. Appx. at 289 ("Further, the district court's suggestion that the discrete act of Hartz's denial of tenure was so 'intertwined with the hostile work environment claim as to make it a component part of a larger unlawful employment practice' is foreclosed by the Supreme Court's decision in *Morgan*. In that opinion, the Court differentiated the requirements for timely filling discrimination charges under Title VII for discrete discriminatory acts and hostile work environment claims. *Id.* at 110, 122 S.Ct. 2061. As explained in Ricks, the clock starts running for charges of discrete discriminatory acts, such as the failure to hire, promote, or train, on the day that the act occurred, and if an employee does not timely file her complaint, that act is no longer actionable under Title VII. *Morgan*, 536 U.S. at 110-11, 122 S.Ct. 2061. However, the Court recognized the continuing violation doctrine for hostile work environment claims. *Id.* at 115-18, 122 S.Ct. 2061. Therefore, as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, 'the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.' *Id.* at 117, 122 S.Ct. 2061. This holding was also affirmed in *Ledbetter*, where the Court explained: The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.").

Accordingly, the continuing violation doctrine does not excuse Plaintiff's failure to file a charge of discrimination with regard to job nos. 072409, 085288, 082241, and 084259. However, Plaintiff may continue to rely upon the denial of job nos. 072409, 085288, 082241 and 084259 for his retaliation claim. *See Griggs v. University Health System*, 2007 WL 708608 (W.D. Tex. 2007).

Plaintiff's motion for partial summary judgment (docket no. 43) is denied.

**Defendant's motion for summary judgment (docket no. 45)**

Defendant seeks summary judgment as to all of Plaintiff's claims as they relate to job no. 063831 (job 831 or "the Dixon job") at Palo Alto College.

Defendant admits that Plaintiff applied for this position, was minimally qualified, and that the position was awarded to Deborah Dixon (age 46). Defendant argues, however, that Plaintiff has failed to establish a prima facie case of age or national origin discrimination. Defendant further argues that Plaintiff's claims of discrimination fail because it has articulated a legitimate, non-discriminatory reason for selecting Dixon and rejecting Plaintiff, and Plaintiff cannot establish any pretext. Specifically, Defendant argues that Plaintiff was not selected for this position because he offered poor or incomplete responses during his interview, he performed poorly during the teaching demonstration, and he made an incorrect statement regarding the photosynthesis process. Defendant asserts that Dixon was the unanimous choice of the selection committee.

With regard to Plaintiff's retaliation claim, Defendant argues that there is no competent summary judgment evidence that Plaintiff's October 25, 2006

charge of discrimination was considered by any of the selection committee members in reaching their recommendation to the college president, Ana Guzman. Defendant further asserts that Dr. Guzman, the ultimate decision-maker in this case, was unaware of Plaintiff's previous complaints.

With regard to Plaintiff's age discrimination claim, Defendant argues that Dixon is only two years younger than Plaintiff and accordingly Plaintiff's claim lacks merit.[5] With regard to Plaintiff's race/color/national origin claims, Defendant argues that Plaintiff has not provided any competent summary judgment evidence to establish that Dixon is not of Iranian descent.[6]

Plaintiff argued in his deposition testimony that at the time he was rejected for this position he had 12 years experience in teaching biology at ACCD and Dixon only had 4 years experience. Plaintiff further argues that he had a previous dispute with one of the members of the selection committee (Robert Leal) about a missing flash drive. Plaintiff further states that on one occasion Leal told him that Leal's father was Iranian, that his father abandoned his mother, and that as a result he did not like his father. Based on both these points Plaintiff infers that Leal was biased against him.

---

[5] In a response (docket no. 79), Plaintiff abandons his age discrimination claim.

[6] The Court rejects this argument, Plaintiff specifically testified that he was the only Iranian applying for the position. Defendant has advanced this argument throughout its eleven motions. If Plaintiff had propounded a request for admission requesting that Defendant admit that all of the individuals selected in lieu of Plaintiff were not of Iranian origin, Defendant would have had to admit the request. Just because one can advance a legal argument, does not mean that you should. Defendant also argues that since Dr. Guzman has repeatedly rehired Plaintiff as an adjunct professor, Defendant is entitled to the "same actor inference" of no discrimination. The Court rejects this argument. The mere fact that Plaintiff was hired for a temporary position does not necessarily mean that discriminatory motives could not have been present when Plaintiff was rejected for a tenure-track faculty position.

Defendant's competent summary judgment establishes that Plaintiff was not recommended for this position because he performed poorly during the teaching demonstration component of the selection process. Defendant has articulated a legitimate, non-discriminatory reason for its non-selection of Plaintiff and the selection of Dixon.

Plaintiff in his Response (docket nos. 73 and 79)[7] argues that ACCD provided no clear guidance to selection committee members as to how they were to evaluate and score their interviews. He also argues that the interview questions were subjective.[8] Further, Plaintiff argues that his affidavit wherein he opines that he properly answered the interview questions and delivered an effective teaching demonstration directly contradicts Defendant's arguments for his non-selection and accordingly creates a fact issue which requires that Defendant's motion for summary judgment be denied.

Conclusory statements are not competent evidence to defeat summary judgment. "Instead, [a plaintiff] must offer specific evidence refuting the factual allegations underlying [the employer's] reasons for [the personnel action]." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345-46 (5th Cir. 2007).

---

[7] Plaintiff initially filed a response (docket no. 66) but the response did not address job no. 063831. Upon realizing the error Plaintiff filed docket no. 73, a motion for leave to file an untimely response. Plaintiff's motion for leave to file response (docket no. 73) is granted.

[8] The Court is unsure how a question that requires a discussion of the major components of photosynthesis can be considered as a calling for an answer that is subjective. Plaintiff also criticizes the selection committee members for not providing clear written instructions regarding the teaching demonstration, not interrupting Plaintiff's demonstration if an incorrect presentation was being delivered, and their lack of detailed note-taking. None of these criticisms (individually or collectively) create a fact issue.

Plaintiff's argument, however, that he was "clearly better qualified" than Dixon requires further discussion. In *Bright v. GB Bioscience Inc.*, 305 Fed. Appx. 197 (5th Cir. 2008), the Fifth Circuit stated: "the phrase should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.* at 205. Both Plaintiff and Dixon had comparable educational qualifications. Although Plaintiff may have had more years of teaching experience, in light of Dixon's resume, application and performance in the teaching demonstration, the Court cannot conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Amie v. El Paso Independent School Dist.*, 253 Fed. Appx. 447, 453 (5th Cir. 2007) (summary judgment affirmed)("Amie argues that a comparison of their résumés clearly shows that the Committee violated their own hiring policy when they rejected him for the position, as he was better qualified, with nine years head coaching experience, than Morales, who had none. Amie's attempt to equate experience with superior qualifications is unpersuasive. Obviously, coaching experience is one component of defining who is more qualified for a head coach/teacher position, but it is not the sole component.")

Defendant's motion for summary judgment (docket no. 45) regarding job no. 063831 is granted.

Defendant seeks summary judgment as to all of Plaintiff's claims related to a "temporary job" as a biology instructor at St. Philip's College.[9] Defendant argues that Plaintiff failed to exhaust his administrative remedies with the EEOC regarding this position. The position was awarded to Kathryn King (age 64).[10]

Dr. William Davis testified that he recommended that Plaintiff be awarded the position and that he made that recommendation to Dean Hudspeth. Dr. Davis testified that after he made that recommendation Dean Hudspeth called him and asked why he had made that recommendation given that the Plaintiff had sued the district. Dr. Davis testified that he thought it was against district policy to employ anyone suing the district. In addition, Dr. Davis testified that he thought Plaintiff was more qualified for the position that King. Dr. Davis also opined that he thought there was a connection between the failure to award the position to Plaintiff given his race and religion and the attacks of September 11.

With regard to Defendant's argument of failure to exhaust, Plaintiff filed an original charge with the EEOC on October 25, 2006. In that charge he alleged he had been denied two tenure-track professor positions (human anatomy and physiology). On March 2, 2007, Plaintiff amended his charge to

---

[9] The Court is uncertain whether this statement is correct. William Davis, PhD testified that the position was in anatomy and physiology.

[10] Plaintiff does not assert any ADEA claim regarding this position.

complain about other denied positions. Defendant argues that this "temporary job" position was not awarded until December 2007 and that Plaintiff never amended his charge to complain about this denial.

The Court agrees that Plaintiff failed to exhaust his administrative remedies regarding his Title VII complaints. *Garrett v. Judson Independent School Dist.*, 299 Fed. Appx. 337 (5th Cir. 2008). Accordingly, Plaintiff's Title VII (non-retaliation) claims are dismissed. However, Plaintiff's Title VII retaliation claim would reasonably be expected to "grow out of" Plaintiff's earlier filed charges of discrimination. *See e.g. Griggs v. University Health System*, 2007 WL 708608 (W.D. Tex. 2007). Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is denied. The failure to file a charge of discrimination has no effect on Plaintiff's 42 U.S.C. § 1981 claim. Any motion to dismiss the section 1981 claim is denied.

### Defendant's motion for summary judgment (docket no. 47)

Defendant seeks summary judgment as to all of Plaintiff's claims related to his application for job no. 063199 (anatomy and physiology instructor positions). Numerous applicants applied for this position. Plaintiff was one of six individuals selected for an interview. Thereafter, Plaintiff's name and three other names were forwarded to Palo Alto College President Ana Guzman. Robert Leal and Sara Wilkens were the successful candidates for these two openings.[11]

---

[11] Plaintiff testified that at the time of his non-selection he had 12 years teaching experience compared to Leal's two semesters of experience. Plaintiff testified that Wilkens had less teaching experience than him (eight years). Plaintiff also testified that prior to his non-selection, Dr. Skelley told him that he was a very good instructor, but that he had an accent. Plaintiff also testified that during a faculty meeting, Dr. Skelley referred to him as

Defendant argues that Plaintiff fails to establish a prima facie case of discrimination inasmuch as Leal is a male and of Iranian descent. Defendant also argues that it had a legitimate, non-discriminatory reason for not selecting Plaintiff for this position, i.e. Dr. Guzman concluded that Wilkins and Leal's interview responses demonstrated an ability to motivate and nurture students beyond what Plaintiff demonstrated in his teaching demonstration.

Plaintiff argues that the reasons expressed for his non-selection were pretextual and that he was clearly better qualified than the other two candidates.[12] In an effort to overcome the comparator obstacle, Plaintiff appears to argue that Leal is Hispanic and not of Iranian descent. That, however, is directly contradictory to his earlier position wherein Plaintiff acknowledged that Leal's father was Iranian.[13] He further disputes Defendant's characterization of his performance during the teaching demonstration. Plaintiff argues that if the factfinder in this case reviewed a videotape made of the various teaching presentations they would agree with his assessment.[14] Plaintiff also argues that

---

engaging in childish behavior because he lodged a discrimination complaint. A deposition excerpt from William Davis, PhD indicates that Dr. Davis recommended that the Plaintiff receive the position.

[12] Plaintiff argues that at the time of his non-selection he had 10 years of teaching experience and that Leal had only one year. The Court is uncertain how many years of teaching experience was possessed by Wilkins.

[13] Plaintiff alternatively argues that Leal was not born in Iran, does not have an accent, and none of the decision makers knew of Leal's Iranian descent. It is undisputed that the decision makers knew Plaintiff was born in Iran and speaks with an accent.

[14] The Court has not been informed as to whether or not such a videotape was actually made during the teaching demonstration. It appears that Plaintiff is merely arguing that a videotape should have been made.

the Defendant has propounded inconsistent reasons for his non-selection to the EEOC. This statement is refuted by a review of the District's response to the EEOC. In that response references were made to the inferior quality of Plaintiff's presentation. Plaintiff also argues that Dr. Guzman's discounting of teaching experience also constitutes evidence of pretext. Dr. Guzman testified that in her opinion mere years of teaching experience does not necessarily equate to a better qualified candidate. The mere fact that Dr. Guzman decided to weigh certain criteria less than other criteria (academic credentials or performance during the teaching demonstration) does not constitute a failure to follow selection procedures or any evidence of discrimination.

What does further complicate this analysis, however, is that it appears uncontradicted that Dr. Guzman made inquiries of certain selection committee members whether they had problems understanding Plaintiff's accent. She also apparently asked whether or not any students had lodged complaints of inability to understand Plaintiff because of his accent.

A Plaintiff may establish a case of national origin discrimination by circumstantial evidence. "The Code of Federal Regulations 'defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because ... an individual has the physical, cultural or linguistic characteristics of a national origin or group.' 29 C.F.R. 1606.1. '[N]ational origin is deemed to be inextricably intertwined with an individual's accent.' *Madiebo v. Div. of Medicaid / State of Mississippi, et al.*, 2 F.Supp.2d 851, 855 (S.D. Miss. 1997) (*citing Fragante v. City of Honolulu*, 888 F.2d 591, 596

(9th Cir. 1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990)).” *E.E.O.C. v. Teleservices Marketing Corp.*, 405 F. Supp. 2d 724 (E.D. Tex. 2005).

An employer may take in account an employee or applicant's communication skills when making employment decisions. “The concern, of course, is whether such decision concerning an employee's accent is merely a pretext intended to shroud unlawful employment discrimination.” *Tarley v. Crawford-THG, Inc.*, 2000 WL 276813 (N.D. Tex. 2000). “An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection.... Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment.” *Alvarado v. Texas Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).

Given the inquiries into Plaintiff's accent and what may be perceived as weaknesses in the resumes of Leal and Wilkens when compared to Plaintiff's, the Court concludes that Plaintiff has established a fact issue as to whether the employer's proffered reasons were a pretext for a discriminatory or retaliatory purpose. Defendant's motion for summary judgment regarding job no. 063199 is denied.

### Defendant's motion for summary judgment (docket no. 48)

Job No. 061183 was a full-time, tenure-track biology faculty position at

San Antonio College. Plaintiff applied for this job in 2006. Dr. Robyn McGilloway served as chair of the selection committee. Plaintiff was not among the four finalists selected to interview for the position. In April 2006, the selection committee recommended that the position be awarded to Karl Hagenbuch. San Antonio College President Robert Ziegler approved the recommendation.

Defendant seeks summary judgment on Plaintiff's gender discrimination claim inasmuch as the person selected was also a male. Defendant also seeks summary judgment on Plaintiff's retaliation claim alleging that Plaintiff did not engage in any protected activity before May 2006.[15]

Defendant also seeks summary judgment on all of Plaintiff's remaining claims alleging that Plaintiff has failed to establish a prima facie case of discrimination. In the alternative, Defendant argues that it has articulated legitimate, non-discriminatory reasons for choosing Mr. Hagenbuch and Plaintiff fails to establish pretext. With regard to the age discrimination claim, Defendant argues that Mr. Hagenbuch is 50 years of age (approximately the same age as Plaintiff).

The Court agrees that Plaintiff has failed to establish a prima facie case

---

[15] Plaintiff in his response concedes summary judgment is proper as to his retaliation claim with regard to this position.

of age[16] or gender[17] discrimination with regard to job no. 061183.

Defendant argues that Mr. Hagenbuch was selected because although he held a Master's degree in botany (and not biology), Mr. Hagenbuch had previous teaching experience in diverse fields (including microbiology, pathology, zoology, anatomy and physiology).

Plaintiff essentially argues that the selection process was unstructured, that the job description did not reference any preference for microbiology teaching experience, that one of the other individuals selected for an interview did not have any microbiology teaching experience, that Mr. Hagenbuch lacked a degree in biology, and accordingly Defendant's articulated reason for hiring Mr. Hagenbuch was pretextual. Plaintiff further argues that he had a greater number of years of teaching experience than Mr. Hagenbuch and the others selected for interview.

Defendant responds that employers may consider factors outside a job description in making its selection, and that Plaintiff has failed to establish that his race/national origin played any role in his non-selection to this position. It is well established that employment discrimination laws are not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090, 126 S.Ct. 1027, 163

---

[16] Plaintiff states in his response that he has abandoned his age discrimination claim with regard to this position.

[17] Plaintiff states in its response that he has not alleged a sex discrimination claim with regard to this job position.

L.Ed.2d 855 (2006); *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001). Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (stating that "even an incorrect belief that an employee's performance is inadequate" is a legitimate reason)." *See also LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007). A Plaintiff "must do more than simply argue that [the employer] made an incorrect decision." *Id*. Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("Merely disputing [the employer's] assessment of [the employee's] performance will not create an issue of fact.")." *Id*.

A plaintiff, however, may show pretext by demonstrating that the proffered reasons for the challenged employment action are false or "unworthy of credence." *Nasti v. CIBA Speciality Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment. *Reeves*, 530 U.S. at 146-48.

With regard to this claim, the position advertised was for a biology instructor. Plaintiff has demonstrated that his qualifications were similar to the individual chosen and indeed Plaintiff had a biology major wherein the individual selected did not possess such a degree. There is a question as to when it became apparent that microbiology teaching experience was desirable.

Another individual interviewed had no such experience. Defendant's motion for summary judgment on the race/national origin/section 1981 claim is denied.

### Defendant's motion for summary judgment (docket no. 49)

Plaintiff applied for job no. 082241 in 2008. This position was for a full-time, tenure-tack biology instructor position at St. Phillip's College. Twenty-four individuals applied for the position. Five individuals, including Plaintiff, were interviewed for the position. The selection committee unanimously recommended that Kent Magnusson receive the position. Nevertheless, the selection committee also forwarded Plaintiff's name and two other candidates to St. Phillip's President (Dr. Adena Loston). Dr. Loston interviewed the three finalists and awarded the position to Kent Magnusson. Dr. Loston selected Mr. Magnusson because his interview responses conveyed that he had the ability to engage students.

Defendant seeks summary judgment on Plaintiff's gender discrimination claim inasmuch as the person selected was also a male. Defendant also seeks summary judgment on Plaintiff's Title VII claims alleging that he failed to file a charge of discrimination with regard to the denial of this position.

Defendant also seeks summary judgment on all of Plaintiff's remaining claims alleging that Plaintiff has failed to establish a prima facie case of discrimination. In the alternative, Defendant argues that it has articulated legitimate, non-discriminatory reasons for choosing Mr. Magnusson and Plaintiff fails to establish pretext. With regard to the age discrimination claim, Defendant argues that Mr. Magnusson is older than Plaintiff.

The Court agrees that Plaintiff has failed to establish a prima facie case of age[18] or gender[19] discrimination with regard to job no. 082241.

With regard to Defendant's argument of failure to exhaust, Plaintiff filed an original charge with the EEOC on October 25, 2006. In that charge he alleged he had been denied two tenure-track professor positions (human anatomy and physiology). On March 2, 2007, Plaintiff amended his charge to complain about other denied positions. Defendant argues that job no. 082241 was not awarded until 2008 and that Plaintiff never amended his charge to complain about this denial.

The Court agrees that Plaintiff failed to exhaust his administrative remedies regarding his Title VII complaints. *Garrett v. Judson Independent School Dist.*, 299 Fed. Appx. 337 (5th Cir. 2008). Accordingly, Plaintiff's Title VII (non-retaliation) claims are dismissed. However, Plaintiff's Title VII retaliation claim would reasonably be expected to "grow out of" Plaintiff's earlier filed charges of discrimination. *See e.g. Griggs v. University Health System*, 2007 WL 708608 (W.D. Tex. 2007). Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is denied on this basis. The failure to file a charge of discrimination has no effect on Plaintiff's 42 U.S.C. § 1981 claim.

With regard to Plaintiff's retaliation claim, Defendant further argues that there is no evidence that Dr. Loston, the ultimate decision-maker, was aware of

---

[18] Plaintiff states in his response that he has abandoned his age discrimination claim with regard to this position.

[19] Plaintiff states in its response that he has not alleged a sex discrimination claim with regard to this job position.

Plaintiff's previous protected activity. Plaintiff counters that one of the selection committee members was aware of his previous EEO activity. However, there is no competent summary judgment evidence provided to establish that the selection committee member ever informed Dr. Loston. Dr. Loston testified that she was not aware of any of Plaintiff's previous complaints prior to her selection of Mr. Magnusson. Defendant's motion for summary judgment regarding Plaintiff's retaliation claim is granted.

With regard to Plaintiff's section 1981 claim, Plaintiff alleges that Mr. Magnusson does not hold a degree in biology (he has a degree in physiology). Plaintiff also states that he shared with Dr. Loston that he had teaching experience in various subjects and also explained how he engaged students. Dr. Loston testified that she selected the candidate who best responded to the questions she asked. She further testified that she focused on how the candidate would engage their students. She also testified that she was impressed with Mr. Magnusson's description of how he incorporates models in his teaching. She testified that Plaintiff did not mention any use of models during his interview. Plaintiff argues that Dr. Loston knew the Plaintiff was Iranian because there was a discussion of his participation in the Iranian Olympic (boxing) team. However, Plaintiff merely relies upon his subjective belief that Dr. Loston did not select him because of his race. This is insufficient to defeat summary judgment. Defendant's motion for summary judgment regarding Plaintiff's section 1981 claim is granted.

## Defendant's motion for summary judgment (docket no. 50)

Plaintiff applied for job no. 072409 (full-time, tenure track biology position at St. Phillip College) on March 12, 2007. Forty-eight applicants applied for the job. Dr. William Blanton, Plaintiff and three other applicants advanced through the selection process and were selected for an interview. Plaintiff's name was not forwarded to Dr. Loston for further consideration. Dr. William Blanton was awarded the position.

Plaintiff states in his response that he is not asserting any Title VII gender or race discrimination claims. He also states that he is not seeking any relief for age discrimination.

Plaintiff does pursue a claim for retaliation under Title VII and section 1981. He also seeks relief for alleged race discrimination under section 1981.

With regard to the retaliation claims, Plaintiff fails to bring forth any competent summary judgment evidence that any of the selection committee members were aware of any protected activity engaged in by Plaintiff prior to their decision not to advance Plaintiff's name to Dr. Loston. The chair of the selection committee, Dr. Timothy J. Nealon, testified that he was not aware of any previous EEO activity. No competent summary judgment evidence indicates that any of the other selection committee members were aware of previous protected activity engaged in by the Plaintiff. Defendant's summary judgment motion regarding the retaliation claims is granted.

With regard to the section 1981 race discrimination claim, Defendant states that Plaintiff's name was not advanced by the selection committee

because Plaintiff gave a poor presentation, and that Plaintiff's answers indicated that he may have an inflexible approach to St. Phillip's non-traditional students who often work full-time jobs in addition to engaging in their academic studies. Defendant further responds that Dr. Blanton's responses to the interview questions were "impressive." The parties disagree whether or not Plaintiff correctly responded to a question regarding the photosynthesis process. Plaintiff merely relies upon his subjective belief that he delivered a stronger interview presentation than Dr. Blanton. However, this is insufficient to defeat summary judgment. Defendant's motion is granted on this issue.

### Defendant's motion for summary judgment (docket no. 51)

In May 2006, Plaintiff applied for job no. 065532, a full-time, tenure track biology position at Northeast Lakeview College. A selection committee was formed and Plaintiff was one of five individuals selected for an interview. Based upon their answers during the interview process, the selection committee recommended Thomas Neil McCrary for the position. The selection committee found Plaintiff's presentation rushed, inconsistent, lacking detail and he failed to answer the questions posed to him. Dr. Elizabeth Lewis accepted the committee's recommendation.[20]

Plaintiff states in his response that he is not pursuing a gender discrimination claim. It appears that Plaintiff continues to assert an age discrimination claim with regard to this position but even assuming that he has

---

[20] Dr. Eric Reno, President of NLC delegated final selection authority to Dr. Lewis.

established a prima facie case, he fails to bring forth competent summary judgment evidence that age played a factor in his non-selection. Mr. McCrary is approximately the same age as Plaintiff. Defendant's motion for summary judgment with regard to Plaintiff's age discrimination is granted.

With regard to the retaliation claims, Diane Beechinor, the chair of the selection committee, acknowledges that she was aware that Plaintiff had filed internal complaints of discrimination with ACCD's human resources department.

With regard to the Title VII race/national origin/section 1981 claims, Plaintiff argues that the selection committee chair was aware that Plaintiff was born in Iran.

With regard to the selection committee process, Plaintiff argues that the job description was "fixed" to favor Mr. McCrary. Plaintiff argues that this job description referenced "preferred experience" that was not referenced in any other job positions. He further questions the lack of documentation kept by the committee members regarding the selection process. Plaintiff further argues that none of the existing documentation support the arguments that he delivered a poor interview presentation. Plaintiff also argues that the chair of the selection committee served as the "cat's paw"[21] to insulate Beth Lewis, the final

---

[21] "[T]he discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice. To invoke the cat's paw analysis, [the employee] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Ameen v. Merck & Co., Inc.*, 226 Fed. Appx. 363, 376-77 (5th Cir. 2007).

selecting official from any allegations of discrimination. Finally, Plaintiff argues that he was better qualified than Mr. McCrary arguing that he had six years of teaching biology compared to Mr. McCrary's five years of experience.

Plaintiff's argument that one of the selection committee members knew of his Iranian origin and previous EEO activity fails to rebut the Defendant's legitimate non-discriminatory, non-retaliatory reasons for selecting Mr. McCrary. Plaintiff is not "clearly better qualified." Plaintiff again relies merely on subjective belief and conclusory statements that anyone on the selection committee exhibited racial or retaliatory animus or exerted any improper influence over Dr. Lewis. Defendant's motion for summary judgment regarding Plaintiff's race/national origin and retaliation claims under Title VII or section 1981 is granted.

**Defendant's motion for summary judgment (docket no. 52)**

In March 2006, Plaintiff applied for job no. 064361 (a full-time tenure track biology position at Northwest Vista College. A selection committee was formed, that committee did not select Plaintiff for an interview, and that committee ultimately recommended Christopher Harrison for the position. The committee recommended Mr. Harrison because he previous held a tenured professor position at Howard College, had taught labs in microbiology, submitted an excellent application, and "reflected his understanding of the holistic approach to the community college experience at NVC." Plaintiff was not

selected for an interview because of gaps noted in his employment history. An affidavit from Kurt Elliott, a member of the selection committee, states that Plaintiff was then employed at Palo Alto College and that the members of the selection committee were unaware of Plaintiff's age, race, national origin or previous EEO activity. In July 2006, Northwest Vista College President Dr. Jackie Claunch awarded the position to Chris Harrison.

Plaintiff states in his response that he is not asserting a gender discrimination claim regarding this position. The Plaintiff further states that he has abandoned his age discrimination claim.

Plaintiff argues that Kurt Elliott's affidavit indicates that factors such as the importance of the cover letter, an expression of teaching philosophy, etc. were not factors outlined in the selection criteria and that accordingly this is evidence of inconsistent explanations that create a fact issue. Plaintiff also argues that there was a gap in Mr. Harrison's employment history and that this also serves to create a fact issue. Plaintiff argues that he was "clearly better qualified" than Mr. Harrison arguing that he had ten or twelve years teaching experience compared to Harrison's fours years of experience. Plaintiff argues that the lack of notes or other documents from the selection committee that support Mr. Elliott's statements give Defendant "a lot of wiggle room for them to have an inspired epiphany in regards to the reasons for non-selection...." Finally, Plaintiff argues that Dr. Claunch erred in relying solely upon the selection committee for a recommendation. Dr. Claunch testified that she was not aware that Plaintiff had applied for this position.

With regard to the retaliation claims, Plaintiff admits that his original charge of discrimination was filed on October 25, 2006.[22]  This non-selection occurred in April/May 2006.  Plaintiff provides no evidence to establish that any of the selection committee members were aware of any previous EEO protected activity that he had engaged in.  Defendant's summary judgment regarding Plaintiff's retaliation claims is granted.

With regard to the remaining Title VII race/national origin/section 1981 claims, Plaintiff fails to establish that any members of the selection committee were aware of his race/national origin.

With regard to Plaintiff's argument that he was "clearly better qualified", the Fifth Circuit has stated that this phrase means that "disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *Bright v. GB Bioscience Inc.*, 305 Fed. Appx. 197, 205 (5th Cir. 2008).  However, a plaintiff cannot merely emphasize certain aspects of his resume compared to the successful applicant and state in a conclusory fashion that he was "clearly better qualified."  *See Amie v. El Paso Independent School Dist.*, 253 Fed. Appx. 447, 453 (5th Cir. 2007)("Amie's attempt to equate experience with superior qualifications is unpersuasive. Obviously, coaching experience is one component of defining who is more qualified for a head coach/teacher position, but it is not the sole component.  *See*

---

[22] Plaintiff did not voice a complaint of discrimination with the Alamo Community College District human resources department until May 2006.

*id.*, 81 F.3d at 42 (providing that "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another").

Plaintiff has failed to establish by competent summary judgment evidence that he was "clearly better qualified" than Mr. Harrison. More importantly, Plaintiff has failed to establish that any of the selection committee members even knew of Plaintiff's race or national origin prior to the time of his non-selection. Defendant's motion for summary judgment on this issue is granted.

**Defendant's motion for summary judgment (docket no. 53)**

Plaintiff applied for job no. 074195 (full-time, tenure-track biology instructor position at Northwest Vista College) in January of 2007. A selection committee was established to review the candidates for this position. Plaintiff was not selected for an interview. Two individuals (Andrea Anderson and JoAnn Gonzales) were recommended by the selection committee to Dr. Jackie Claunch, NVC's President.[23]

Defendant argues that Plaintiff failed to file a charge of discrimination with the EEOC regarding the denial of this position. Further Defendant argues that these positions were not filled until July 10, 2007, thus Plaintiff needed to

---

[23] In an affidavit provided by Kurt Elliott, a member of the selection committee, Mr. Elliott states that Plaintiff was not selected for an interview because his application contained unexplained gaps, his resume contained spelling errors, and the committee noted that Palo Alto College never selected Plaintiff for a full-time instructor position. Ms. Anderson was selected because she provided detailed information in her application, she had cellular biology and microbiology teaching experience and previously served as an adjunct instructor at the NVC campus. Ms. Gonzales was selected because she also was an adjunct at NVC and had studied teaching methods that reflected a "student centered environment."

file another charge after that date. Dismissal on this ground is denied inasmuch as Plaintiff's amended charge (dated March 2, 2007) reflects a complaint of denial of a January 2007 position. By this date, Plaintiff was aware he was not selected for an interview. Further, the Defendant responded to the EEOC regarding the denial of job no. 074195.

With regard to the discrimination and retaliation claims, Plaintiff argues that a review of the evaluation matrices completed by the selection committee members does not support the decision to not interview Plaintiff. Accordingly, he argues that a fact issue exists and denial of the motion for summary judgment is required. He further argues that Defendant has articulated different reasons for its selection of the two successful candidates[24] and that he was "clearly better qualified" than either of the two women selected.[25]

With regard to the retaliation claims, it appears that Plaintiff argues that there was a temporal proximity between his filing of an amended charge in March 2007 and his non-selection.[26] The Fifth Circuit, however, has expressly rejected the notion that temporal proximity standing alone is sufficient to establish but-for causation. *See McCullough v. Houston County Tex.*, 297 Fed.

---

[24] In Defendant's response to the EEOC, Defendant noted that Ms. Gonzales was also selected for the position because she is a certified pharmacy technician. This factor was not disclosed in Defendant's summary judgment evidence.

[25] Plaintiff has taught college level biology, human anatomy and physiology courses since 1995. Ms. Anderson has taught college level biology, human ecology, anatomy and physiology courses since 1999. Ms. Gonzales, however, only began teaching college level courses since 2006.

[26] It is unclear to the Court when Plaintiff became aware that he was not selected for an interview.

Appx. 282, 289 (5th Cir. 2008). Plaintiff presents no competent summary judgment evidence to establish that any of the selection committee members were aware of Plaintiff's previous EEO activity. Defendant's motion for summary judgment as to Plaintiff's Title VII and section 1981 retaliation claims is granted.

With regard to the race/national origin claims under Title VII and section 1981, Plaintiff argues that he is "clearly better qualified" than Ms. Anderson and Ms. Gonzales. Plaintiff has failed to establish that he is "clearly better qualified" than Ms. Anderson.

However, the issue is less clear when Plaintiff's qualifications are compared to Ms. Gonzales's. That said, the Fifth Circuit has set a high bar to overcome an employer's personnel decision. In *Thomas v. Trico Products Corp.*, 256 Fed. Appx. 658 (5th Cir. 2007), the Fifth Circuit restated that "better education, work experience, and longer tenure with the company do not establish that [an applicant] is clearly better qualified, meaning that an employer has a right to depart from published job requirements and to value certain attributes over others. *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). [T]he employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision. *Deines v. Tex. Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 282 (5th Cir.1999). Ultimately, the law requires only that the employer's decision is 'somewhere

within the realm of reason.'" *Thomas v. Trico Products Corp.*, 256 Fed. Appx. at 662. Given this standard, Plaintiff has failed to establish that he was "clearly better qualified" than Ms. Gonzales.

In addition, Plaintiff has not established that the selection committee was aware of either his Iranian origin or his age. Defendant has articulated rational, non-discriminatory reasons for not selecting the Plaintiff and selecting Ms. Anderson and Ms. Gonzales. "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of employment decisions nor ... to transform the courts into personnel managers.' " *Murungi v. Xavier University of Louisiana*, 313 Fed. Appx. 686 (5th Cir. 2008). Accordingly, Defendant's motion for summary judgment as to Plaintiff's Title VII, section 1981 and ADEA claims is granted.

### Defendant's motion for summary judgment (docket no. 54)

In January 2008, Plaintiff sought job no. 085288 (full-time, tenure-track biology position at Lakeview College). Thirty-six applicants applied for this position. Four applicants were ultimately chosen for an interview. Plaintiff was not chosen for an interview. Laura Houston was ultimately recommended by the selection committee to Dr. Beth Lewis, Vice-President for Academic Affairs. Defendant contends that Ms. Houston was chosen because she submitted a detailed application, previously served as an associate professor of biology at Montgomery Community College, and her application reflected full-time teaching experience in biology, anatomy, physiology, and biotechnology.

Defendant seeks summary judgment arguing that Plaintiff failed to file a charge of discrimination with the EEOC regarding this claim. In the alternative, it seeks summary judgment on all of Plaintiff's claims arguing that Plaintiff has failed to establish pretext.

Plaintiff responds that the chair of the selection committee, Diane Beechinor, had prior knowledge of the Plaintiff's EEO complaints. Plaintiff also argues that Ms. Houston was "substantially less qualified." Further, Plaintiff questions why interview documents are missing for Ms. Houston and argues that this in of itself creates a fact issue requiring that the summary judgment motion be denied. Plaintiff further argues that the selection committee members failed to correctly complete their evaluation sheets regarding his work experience. Plaintiff also argues that Ms. Houston's application also contained typographical errors, but that her application was not summarily denied as his was.

Plaintiff appears to concede that his age discrimination charge should be dismissed.[27]

The Court agrees that Plaintiff failed to exhaust his administrative remedies regarding his Title VII complaints. *Garrett v. Judson Independent School Dist.*, 299 Fed. Appx. 337 (5th Cir. 2008). Accordingly, Plaintiff's Title VII (non-retaliation) claims are dismissed. However, Plaintiff's Title VII retaliation claim would reasonably be expected to "grow out of" Plaintiff's earlier filed charges of discrimination. *See e.g. Griggs v. University Health System*, 2007

---

[27] Plaintiff's Response contains a proposed order suggesting dismissal of the ADEA claim.

WL 708608 (W.D. Tex. 2007). Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is denied on this basis. The failure to file a charge of discrimination has no effect on Plaintiff's 42 U.S.C. § 1981 claim.

With regard to the section 1981 discrimination claims, Plaintiff provides only his subjective belief and conclusory statements that he was discriminated against on the basis of his race/national origin. Plaintiff has not established that he was "clearly better qualified" than Ms. Houston. Defendant's summary judgment motion on these claims are granted.

With regard to the Title VII and section 1981 retaliation charges, Defendant contests that Ms. Beechinor was a member of this selection committee. Even assuming that Ms. Beechinor was a member of the selection committee, Plaintiff presents no evidence that she informed other members of the selection committee and Defendant has brought forth competent summary judgment evidence that Plaintiff's prior EEO activities were not discussed during the selection process. Again, Plaintiff merely relies upon his subjective belief and conclusory remarks to support his retaliation claim. Defendant's motion for summary judgment is granted as to Plaintiff's Title VII and section 1981 retaliation claims.

### Defendant's motion for summary judgment (docket no. 55)

In January 2008, Plaintiff applied for job no. 084259, a full-time, tenure-track biology position at Northwest Vista College. A selection committee was convened to review candidates for this position. Plaintiff was not selected for an interview. Dr. David Rohrbach was ultimately recommended by the selection

committee to NVC's President, Dr. Jackie Claunch. Dr. Rohrbach was selected because he was already an instructor at NVC and was previously a tenured faculty member at another college, had published extensively in the area of cellular biology and had broad teaching experience. Plaintiff was not selected for an interview because his application did not explain where he was employed between 1991 and 1995. The selection committee also believed that Plaintiff's application reflected a narrow teaching range that was limited to anatomy, physiology and general biology.

Defendant seeks summary judgment arguing that Plaintiff failed to file a charge of discrimination with the EEOC regarding this claim. In the alternative, it seeks summary judgment on all of Plaintiff's claims arguing that Plaintiff has failed to establish pretext.

The Court agrees that Plaintiff failed to exhaust his administrative remedies regarding his Title VII complaints. *Garrett v. Judson Independent School Dist.*, 299 Fed. Appx. 337 (5th Cir. 2008). Accordingly, Plaintiff's Title VII (non-retaliation) claims are dismissed. However, Plaintiff's Title VII retaliation claim would reasonably be expected to "grow out of" Plaintiff's earlier filed charges of discrimination. *See e.g. Griggs v. University Health System*, 2007 WL 708608 (W.D. Tex. 2007). Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is denied on this basis. The failure to file a charge of discrimination has no effect on Plaintiff's 42 U.S.C. § 1981 claim.

Plaintiff in his response abandons any age discrimination claim. Plaintiff also abandons any Title VII sex/race/national origin discrimination claim.

With regard to the section 1981 discrimination claims, Plaintiff provides only his subjective belief and conclusory statements that he was discriminated against on the basis of his race/national origin. Plaintiff argues that some of the others selected for an interview also suffered from an alleged narrow teaching experience, however, he was not interviewed. This, however, does not establish that he was better qualified than the person who actually received the position. Plaintiff also argues that he was injured from 1992 through 1994 and the chair of the selection committee could have simply inquired of him why there were employment gaps in his resume. Plaintiff also argues that Dr. Rohrbach's application was not completely fully, yet his failures were overlooked. Further, Plaintiff faults the selection committee's completion of the matrices used in evaluating the various candidates. In addition, Plaintiff argues that Dr. Rohrbach did not meet the minimum qualifications for the position inasmuch as he does not possess a master's degree in biology.

Plaintiff has not established that he was "clearly better qualified" than Dr. Rohrbach. Plaintiff's claim that he lacked the minimum qualifications for the position is wholly unsupported given that Dr. Rohrbach's resume indicates that he holds a Ph.D. in biomedical research. Defendant's summary judgment motion on these claims are granted.

With regard to the Title VII and section 1981 retaliation charges, Plaintiff argues that he filed this lawsuit on December 18, 2007 and applied for this position in January 2008. It is uncertain from the summary judgment evidence presented when Plaintiff was notified that he was not selected for an interview.

It appears that Dr. Rohrbach was selected for the position in July 2008. Plaintiff argues that the close temporal proximity between his filing of this lawsuit and his non-selection establishes a sufficient basis from which to deny summary judgment.[28] However, the law in the Fifth Circuit states that temporal proximity, standing alone, is insufficient to establish a prima facie case of retaliation. *See Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)("*Breeden* makes clear that (1) to be persuasive evidence, temporal proximity must be very close, and importantly (2) temporal proximity alone, when very close, can in some instances establish a prima facie case of retaliation. *See id.* But we affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation."). Plaintiff offers no competent summary judgment evidence that any members of this selection committee were aware that he had filed any lawsuit or had engaged in any prior EEO activity. Defendant's motion for summary judgment on the retaliation claims is granted.

## Conclusion

Plaintiff's motion for partial summary judgment (docket no. 43) is denied.

Defendant's motion for summary judgment (docket no. 45) is granted.

---

[28] Apparently recognizing that Fifth Circuit case law may be problematic inasmuch as seven months elapsed from the filing of his lawsuit and the award of the position to Dr. Rohrbach, Plaintiff argues that if an employer wishes to retaliate against an employee, in a failure to promote case, the opportunities for retaliation may not necessarily present themselves in an expedient manner. Accordingly, he urges the Court to adopt a theory that an employer can "lay in wait" to retaliate. *See e.g., Mandell v. County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003). The Court declines the invitation to reject Fifth Circuit precedent.

Defendant's motion for summary judgment (docket no. 46) regarding the "temporary job" is granted in part and denied in part. Plaintiff's Title VII (non-retaliation) claims are dismissed. Defendant's motion to dismiss Plaintiff's Title VII retaliation claim and section 1981 claim is denied.

Defendant's motion for summary judgment (docket no. 47) is denied.

Defendant's motion for summary judgment (docket no. 48) regarding job no. 061183 is granted in part and denied in part. Plaintiff's sex, age and retaliation claims are dismissed. Plaintiff's Title VII race/national origin and section 1981 claims survive.

Defendant's motion for summary judgment (docket no. 49) is granted.

Defendant's motion for summary judgment (docket no. 50) is granted.

Defendant's motion for summary judgment (docket no. 51) is granted.

Defendant's motion for summary judgment (docket no. 52) is granted.

Defendant's motion for summary judgment (docket no. 53) is granted.

Defendant's motion for summary judgment (docket no. 54) is granted.

Defendant's motion for summary judgment (docket no. 55) is granted.

It is so ORDERED.

SIGNED this 16th day of September, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE